UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                             CASE NO. 8:10-CR-136-T-30EAJ

MICHELLE DUVAL

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

The United States opposes defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)]. (Doc 99).   Defendant has filed a pro se motion that also alludes to a possible request for home confinement. (Doc 99)   To the extent that defendant is also making a request for home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 362)] based on COVID-19 concerns, the United States also opposes this request.

Defendant has not exhausted her administrative appellate remedies based on her own submissions.   Defendant states that she has requested compassionate release, and has been denied such relief from the Bureau of Prisons ("hereinafter BOP").   Defendant has provided an email notification from the Warden at the facility where she was detained on April 16, 2020 (Doc 99, Exhibit B)   In the email, the Warden indicates that after review, defendant does not warrant an early release from her sentence based on her concerns about being potentially exposed or contracting COVID-19. (Doc 99, Exhibit B)   It appears that this correspondence involves only defendant's request to be considered for early release based on BOP's home confinement release program.   As the Court is aware, this program

was instituted by BOP to deter the spread of the virus in its facilities.   However, in the email submission provided by defendant, the Warden further notes that if defendant can demonstrate that she has any medical conditions that can satisfy the requirements for compassionate release, she should submit a RIS request to the RIS Coordinator, specifically stating which portion of the policy she argues she meets. (Doc 99, Exhibit B).   While it appears that defendant emailed a response to the Warden asking for compassionate release, again citing her COVID-19 concerns, she has not included any information suggesting that she submitted a RIS request to the RIS coordinator for further review. She notes that she would like to provide "full access to my medical records so you can see the damage that this Virus can continually cause me and my life. I would like to go home." (Doc 99, Exhibit B) This email is the only information that defendant has provided in her claim that she has exhausted all administrative remedies with BOP.   The United States has contacted the BOP to find out if there is a RIS request on file and none has been located up to the filing of this response. The United States is still awaiting additional records from BOP (despite repeated requests the records are still pending due to volume of requests) to confirm this, but it does not appear that defendant ever followed up as directed by the Warden. To the extent that defendant is relying on this email between the Warden and defendant to claim that she has exhausted all of her administrative remedies, her claim is without merit based on her submissions to the Court and a preliminary review by BOP.   It appears from defendant's own motion that she still has available administrative remedies within BOP that have not been sought. If defendant made additional requests or is in some type of appellate process with the BOP, those records have not been provided or located as of the time of this response.   As a consequence, her request for the Court to address her release based on

compassionate release is premature because there are still remedies available to her within the BOP system.

Even if defendant had exhausted all of the administrative remedies available to her, she has not indicated that she is suffering from any medical conditions that are extraordinary and compelling in nature that would require her release from BOP custody. Defendant suggests that she should be released because she suffers from obesity, asthma, diabetes, hypertension, CPAP, anemia, seizures, fibroids, respiratory problems and glaucoma.   While these conditions certainly warrant medical attention, defendant has not suggested that they are life-threatening in nature, and they are presumably being treated through the BOP medical professionals.   It should be noted that defendant has not included her medical records as an attachment to her motion for review.   Counsel has requested defendant's most recent medical records but they are also pending at this time due to the volume of requests submitted to BOP, especially during the holiday period.   The United States has requested these records from BOP and they are pending at this time. Counsel spoke to BOP earlier this week and was told they should be forthcoming should the Court wish to review them.

Defendant has submitted a number of attachments to her motion which are seemingly articles or memos of a general nature about COVID-19.   The United States suggests that they are not attachments that corroborate defendant's claims or requests in her motion for compassionate release.

To the extent that defendant is seeking home confinement, this Court should deny her request for an order directing the BOP to transfer her to home confinement. BOP has indeed implemented a COVID-19 action plan to minimize the risk of transmission into and

throughout its facilities.[1]   However, the fear of exposure to or catching COVID-19 alone is not an extraordinary and compelling reason to grant a defendant compassionate release. As previously discussed, the Warden at defendant's BOP facility reviewed defendant's file and determined that home confinement was not warranted in her case. (Doc 99, Exhibit B)

## I.   Background.

This Court sentenced defendant to a period of 188 months' confinement after pleading guilty to charges of being a Felon in Possession of a Firearm. Doc. [xx]. A Presentence Investigation Report ("hereinafter PSR") was prepared for the Court's review prior to sentencing.   Defendant was sentenced to 188 months' imprisonment as an armed career criminal, which was the minimum sentence the Court could impose.

Defendant was indicted by a federal grand jury on March 31, 2010 (PSR ¶ 1). In 2009, a confidential informant had advised law enforcement that on several occasions defendant had stored stolen property at her residence, including all-terrain vehicles that were stored in her garage. (PSR ¶ 13).   Law enforcement subsequently executed a search warrant at her home.(PSR ¶ 14)   Officers located narcotics in plain view and secured a second search warrant.   Officers located two pistols in the master bedroom of the house, 59.44 grams of marijuana, .3 grams of crack cocaine and numerous scales which tested positive for cocaine. (PSR ¶ 14).   Defendant also had prescription pill bottles which contained a total of 50.88 grams of Hydrocodone and Acetaminophen.(PSR ¶ 14).   In addition, a substantial amount of counterfeit United States currency was also located within the residence in the amount of $4,520. (PSR ¶ 14).   Defendant was arrested and provided a

---

[1]   *See* BOP Implementing Modified Operations, available at
https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed on 12/20/20).

post-Miranda statement in which she admitted that she had a two shooter pistol in a cup in her bedroom. (PSR ¶ 16).   Defendant was released on bond but re-arrested when a third search warrant was executed at her house which revealed that she was in possession of approximately 38 grams of marijuana, 4.8 grams of crack cocaine, and a firearm in possession of a co-defendant who was living in her house. (PSR ¶ 18).

Defendant's total offense level at the time of sentencing was 34. (PSR ¶ 36).   Her criminal history was VI based on her armed career criminal status.   The defendant was determined to be an armed career criminal based on 3 priors involving the sale of rock cocaine on December 21, 1992; the sale of cocaine on April 1, 1996; and robbery on August 5, 1997. (PSR ¶ 35).   It should be noted that she had 37 criminal history points. 13 or more criminal history points establish a criminal history category of VI. (PSR ¶ 94).

Defendant's substantial criminal history background began at the age of 17 and is documented in 16 pages of her PSR (PSR, pgs. 10-26).   Her prior offenses included convictions for theft, narcotics, robbery, exploiting an elderly person, driving violations, introducing contraband into a detention facility and providing a false name to law enforcement. (PSR, pgs. 10-16).   At the time of sentencing, defendant had been known to have used 28 alias names. (PSR, p. 3).

Defendant is currently incarcerated at the Federal Correctional Facility in Danbury, Connecticut, is 49 years old, and is projected to be released on May 22, 2024. *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/ (last accessed on 1/20/2021). Defendant has filed the instant motion for compassionate release based on concerns that a COVID-19 outbreak could occur at the facility where she is detained and she would be affected.   It appears that at the time of her motion defendant was housed at the Federal

Correctional facility in Danbury, Connecticut, where she remains today.   While it appears that COVID 19 cases have been reported at the Danbury facility, there is no information that an uncontrollable outbreak has occurred; or that the facility itself cannot provide medical assistance to its inmates.

The United States is cognizant of inmate concerns stemming from COVID-19.   The BOP, in order to minimize the concern or risk, has diligently monitored the situation and taken preventative measures to avoid the spread of the disease in its facilities around the country. The BOP has taken aggressive action to mitigate the effects of COVID-19, and has been taking proactive steps to prevent potential coronavirus transmissions for months. As detailed below, the United States opposes defendant's requested relief.

**II.**   **The BOP's response to COVID-19.**

COVID-19 is a dangerous illness that, in a short time, has caused many deaths in the United States and a massive disruption to our society and economy. The BOP continues to take significant measures to protect the health of the inmates in its charge. The BOP maintains and updates regularly an action plan to maximize the safety and security of the inmates in its custody. The BOP maintains a Coronavirus Resource page on its website, which provides its most recent information regarding the BOP's response to COVID-19 and the modification of its operations. *See* BOP Covid-19 Resource Page, available at

https://www.bop.gov/ coronavirus/ (last accessed on 12/20/20).

**III.**   **As part of its response to COVID-19, the BOP may designate certain inmates to a term of home confinement.**

In an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, the BOP is exercising

greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). The Warden in defendant's facility reviewed her file for such home confinement and determined that it was not warranted in her case. (Doc 99, Exhibit B).

Congress has also acted to enhance the BOP's flexibility to respond to the pandemic. Under the CARES Act, enacted on March 27, 2020, the BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General gave the BOP Director the authority to exercise this discretion, beginning at the facilities that so far have seen the greatest incidence of coronavirus transmission. *See* April 3, 2020 Memorandum to Director of Bureau of Prisons.[2]  *See* Federal Bureau of Prisons, COVID-19 Home Confinement Information, at https://www.bop.gov/coronavirus/ Inmates do not need to apply to be considered for home confinement. BOP Case Management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. While all inmates are being reviewed for

---

[2] BOP has described its increased use of home confinement on its website: https://www.bop.gov/resources/news/20200405_COVID19_home_confinement.jsp. 17.

suitability for home confinement, any inmate who believes he or she is eligible may request to be referred to home confinement and provide a release plan to his or her Case Manager.

All of these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions. The BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling incarceration orders.

Unfortunately and inevitably, some inmates have become ill, and more likely could in the weeks ahead. But the BOP must consider its concern for the health of its inmates and staff alongside other critical considerations. For example, notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times.   BOP must also consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

**IV.    The legal framework of Defendant's home-detention request.**

Defendant has asked that this Court order BOP to place her on home confinement. According to her own submissions to the Court, BOP denied her request for home confinement deeming it unwarranted in her case.   Defendant was further provided the

option of having the BOP further evaluate a request for compassionate release if she provided extraordinary or compelling reasons for her release. There is no indication that defendant pursued that option.   Respectfully, the United States would suggest that Defendant's present request must be denied because this Court has no authority to direct the BOP to place a defendant in home confinement. Rather, such designation decisions are committed solely to the BOP's discretion. *See United States v. Calderon*, 801 F. App'x 730 (11th Cir. 2020) (district courts lack jurisdiction to grant early release to home confinement pursuant to Second Chance Act, 34 U.S.C. § 60541(g)(1)(A)).

Once a court imposes a sentence, the BOP is solely responsible for determining an inmate's place of incarceration to serve that sentence. *See* 18 U.S.C. § 3621(b); *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam)[3]; *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). A court has no authority to designate a prisoner's place of incarceration. *Tapia v. United States*, 564 U.S. 319, 331 (2011) ("[a] sentencing court can recommend that the BOP place an offender in a particular facility or program ... [b]ut decision making authority rests with the BOP."); 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment[.]"). Because defendant's request for home confinement alters only the place of incarceration, not the actual term of incarceration, only the BOP may consider her request.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

Moreover, neither the Constitution nor statute allows the Court to order home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."). Following the imposition of sentence, courts have limited jurisdiction to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. *United States v. Diaz-Clark*, 292 F.3d 1310, 1319 (11th Cir. 2002). Section 3582(c) contemplates only a reduction in sentence. *See* § 3582(c). But defendant's request to serve the rest of her term in home confinement, as opposed to prison, works no reduction to her sentence. Home confinement merely permits the inmate to serve out her term of imprisonment at home.   Defendant's request for such relief therefore falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Because § 3582(c) deprives this Court of jurisdiction to grant home confinement and because defendant offers no other statutory authority to support her request for such relief, this Court has no authority to act on her request for home confinement.[4]

**V.     The legal framework of Defendant's compassionate release request.**

---

[4] If a court grants a sentence reduction, it may "impose a term of … supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). In imposing a term of supervised release, the court may impose a period of home confinement as a condition of supervised release, provided that the court finds that home confinement is a "substitute for imprisonment." USSG §5F1.2; *see* 18 U.S.C. § 3583(d). Alternatively, a court may consider modifying an existing term of supervised release to add a period of home confinement, consistent with USSG §5F1.2. *See* § 3583(e)(2).

This Court has no inherent authority to modify a sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1319 (11th Cir. 2002). And defendant has pointed to nothing giving rise to jurisdiction under the compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)—or anything else for that matter. But even if there were a jurisdictional mechanism available, defendant has not identified a legal basis that could justify relief because, as detailed below, COVID-19 is not an extraordinary and compelling reason to grant compassionate release. Furthermore, even if it were, defendant has provided no information that she has sought—much less exhausted—her administrative remedies, which is fatal to her motion.].

A court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with applicable policy statements of the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Under the statute, as amended by Section 603(b) of the First Step Act, this Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

The Sentencing Commission's policy statement addressing sentence reductions under § 3582(c)(1)(A) provides examples of qualifying "extraordinary and compelling reasons" including (1) terminal illness; (2) a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison; or (3) the death of the caregiver of the defendant's minor children. *See* USSG §1B1.13 comment. (n.1).[5] Even

---

[5] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First

when an extraordinary and compelling reason exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public. USSG §1B1.13(2).

Previously, only the BOP could file a motion for compassionate release. The First Step Act amended the provision to permit a defendant to bring a motion upon the *earlier* of either (1) the exhaustion of all administrative rights to appeal the BOP's failure to bring a motion to reduce his sentence (the exhaustion requirement) *or* (2) the lapse of 30 days from the BOP's receipt of the defendant's request that the BOP bring such a motion (the lapse requirement). *See* First Step Act of 2018, 115 P.L. 391, § 603(b)(1); *see also United States v. Gardner,* 2020 WL 1673315, at *1 (D. Minn. Apr. 6, 2020).[6]

---

Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

[6] Some courts—including some within the Middle District of Florida—have held that, if the warden denies a request during the first 30 days, the inmate cannot proceed to court until administrative remedies are fully exhausted. *See United States v. Read*, 2020 WL 3103983, *2 (M.D. Fla. June 11, 2020) (J. Chappell); *United States v. Raftopoulos*, 2020 WL 3064793, *3 (M.D. Fla. June 9, 2020) (J. Antoon); *United States v. Rodriguez-Begerano*, 2020 WL 3000737, *2 (M.D. Fla. June 4, 2020) (J. Covington); *United States v. Chappell*, 2020 WL 2573404, *1–2 (M.D. Fla. May 21, 2020) (J. Covington); *United States v. Eyerman*, 2020 WL 2466189, *2–3 (M.D. Fla. May 13, 2020) (J. Steele); *United States v. Weidenhamer*, 2020 WL 1929200 (D. Ariz. Apr. 21, 2020); *United States v. Miller,* 2020 WL 113349 (D. Idaho Jan. 8, 2020); *United States v. Elgin*, 2019 U.S. Dist. LEXIS 86571, *3 (N.D. Ind. May 23, 2019); *United States v. Watson*, 2020 WL 1890541, at *3 (N.D. Okla. Apr. 16, 2020); *United States v. Hilton*, 2020 WL 836729 (M.D.N.C. Feb. 20, 2020); *United States v. Nance*, 2020 WL 114195 (W.D. Va. Jan. 10, 2020); *United States v. Mendoza*, 2019 WL 6324870, at *4 (D. Minn. Nov. 26, 2019); *United States v. Becks*, 2019 U.S. Dist. LEXIS 111051, *2–3 (D. Neb. July 3, 2019) (held as matter of discretion). However, the Department's views the plain language of the First Step Act to allow an inmate to file a motion after 30 days have passed since the request was made to the warden, *or* exhausting administrative review, *whichever is earlier. See* First Step Act of 2018, 115 P.L. 391, § 603(b)(1); *United States v. Gray*, 416 F. Supp. 3d 784, 787–88 (S.D. Ind. Sept. 20, 2019); *United States v. Gardner*, 2020 WL 1673315, at *1 (D. Minn. Apr. 6, 2020).

Once either the exhaustion or lapse requirement is met, a court may reduce a defendant's term of imprisonment after considering whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13. Reductions may be granted if (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 3582(c)(1)(A)(i). As the movant, defendant bears the burden to establish that she is eligible for a sentence reduction. *United States v. Heromin*, 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (J. Covington); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (holding that a movant for a reduction under § 3582(c)(2) bears the burden to establish a reduction is warranted).

Defendant has argued that her request for home confinement was denied by the Warden in her facility.   However, she was provided the option of pursuing other options and there is no indication that she did so. The failure to have exhausted administrative remedies within the BOP is fatal to a defendant's motion for compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020) (published) (per curiam) ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."); *see also United States v. Estrada Elias*, No. 6:06-096-DCR, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019); *accord United States v. Elgin*, Case No. 2:14-cr-129-JVB-JEM, 2019 U.S. Dist. LEXIS 86571, *2–3 (N.D. Ind. May 23, 2019); *cf. United States v. Leverette*, 721 F. App'x 916, 917 (11th Cir. 2018) (exhaustion of BOP remedies is requisite for judicial review under 28 U.S.C. § 2241); *United States v. Roberson*, 746 F. App'x 883, 885 (11th Cir. 2018) (same); *United States v. Alexander*, 609 F.3d 1250, 1260 (11th Cir. 2010) (same). The vast majority of

district courts to address this issue agree. *See, e.g.*, *United States v. Epstein*, 2020 WL 1808616 (D.N.J. Apr. 9, 2020) (citing numerous cases).   Because defendant has failed to exhaust her administrative remedies, her motion should be denied on that basis alone.

## VI.   Defendant has not identified extraordinary and compelling reasons for compassionate release.

In any event, defendant's request for a sentence reduction should be denied because she has not demonstrated "extraordinary and compelling reasons" warranting release. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG §1B1.13, comment. n.1(A). Potential COVID-19 exposure is not an extraordinary and compelling reason to grant release under any circumstances.

To state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that a condition that falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG §1B1.13, comment. n.1(A). If a defendant's medical condition does not fall within one of the categories specified

in the application note (and no other part of the application note applies), the motion must be denied.

The mere existence of the COVID-19 pandemic—which poses a general threat to every non-immune person in the country—does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597; *see also United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).")).[7] To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to the BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home

---

[7] *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention otherwise would be warranted. *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008) (considering pretrial detention).

A defendant seeking compassionate release bears the burden of establishing that release is warranted. *United States v. Heromin*, 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (J. Covington); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (holding that a movant for a reduction under § 3582(c)(2) bears the burden to establish a reduction is warranted). Here, defendant simply has not met her burden. She has not provided sufficient documentation for her asserted medical condition[s] other than listing a series of medical conditions without medical records. Defendant, therefore, cannot meet her burden to establish her entitlement to a sentence reduction on that ground alone. Defendant has not asserted that she suffers from a specified condition and that makes her more vulnerable to becoming seriously ill should she contract COVID-19.   Her contention that she suffers from medical ailments that she wants to go home does not establish "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and so defendant's motion cannot be granted.

Defendant has not provided sufficient documentation for her asserted medical conditions and therefore cannot meet her burden to establish her entitlement to a sentence reduction on that ground alone.   While defendant has asserted that she suffers from several

medical conditions, they do not rise to the level of severity required under the policy statement as prescribed by the CDC.   *See* Centers for Disease Control, *People with Certain Medical Conditions*, available at https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed 12/18/20).

Finally, even if a case of COVID-19 were to be confirmed at the facility, the facility has the capacity to address it. The facility employs a team of medical professionals and provides round-the-clock medical care. The facility is equipped to provide medical isolation when required. By virtue of being in the BOP's custody, defendant is in the presence of medical professionals at all times. In the unlikely event that defendant becomes infected with COVID-19, she will be quarantined, monitored, and receive necessary medical treatment, wholly consistent with the CDC's guidelines. Defendant has not made a factual record that her needs will not be met while detained.

At the present time, it is apparent that, but for the COVID-19 pandemic, defendant would present no basis for compassionate release. Her medical ailments can be well-controlled by the medical staff at BOP and do not present any impediment to her ability to provide self-care in the institution.

The only question, then, is whether the risk of COVID-19 changes that assessment. The United States acknowledges that defendant may present a risk factor identified by the CDC as heightening the risk of severe injury or death were the inmate to contract COVID-19. However, there is no indication that BOP cannot provide defendant with the necessary

precautions to safeguard against COVID-19 as well as provide her necessary medical treatment.

The United States argues that the defendant is not entitled to relief. This Court must consider all pertinent circumstances, including the § 3553(a) factors, and possible danger to the community. Presently, it appears that defendant's medical conditions are appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19, and would also act to treat any inmate who does contract COVID-19.

**VII.**    **Even if Defendant could establish an extraordinary and compelling reason for compassionate release, the applicable § 3553(a) factors strongly weigh against granting her compassionate release.**

Alternatively, defendant's request for a sentence reduction should be denied because she has failed to demonstrate that she is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors. Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG §1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. 18 U.S.C. § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). The defendant received the minimum mandatory sentence as an armed career criminal. She had 32 criminal history points at the time of sentencing and had a criminal history category of VI. Prior to receiving the federal sentence that she is serving, defendant had a long and continuous criminal record involving many different felony crimes that included narcotics, theft and robbery.

Furthermore, setting COVID-19 concerns aside, this Court must deny release unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG §1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Defendant has not met her burden of establishing eligibility, and the § 3553(a) factors strongly weigh against granting compassionate release.

Defendant would pose a danger to public safety if released. This Court should deny a sentence reduction on that basis alone.   In addition, the § 3553(a) factors strongly disfavor a sentence reduction. Defendant was convicted of a sentence involving firearms, narcotics were located inside of her home and she violated her conditions of pretrial release.

In sum, this Court should deny defendant's motion for compassionate release and home confinement release based on her failure to exhaust administrative remedies and provide any extraordinary or compelling reasons for her release. Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction. Defendant has not met her burden to show that a reduction is warranted in light of the danger that defendant could pose to the community, the seriousness of her offense of conviction, her extensive criminal history and the need to provide deterrence in order to protect the community.

**CONCLUSION**

For the foregoing reasons, this Court should deny defendant's motion for

compassionate release based on COVID-19.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:    */s/ Maria Guzman*
Maria Guzman
Assistant United States Attorney
Florida Bar No. 053325
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail:Maria.Guzman@usdoj.gov

**U.S. v. Michelle Duval**                    **Case No. 8:10-cr-136-T-30EAJ**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 22, 2021, a true and correct copy of the

foregoing document and the notice of electronic filing were sent by United States

Mail to the following non-CM/ECF participant:

> Michelle Duval, 51628-018
> FDC Philadelphia
> FEDERAL DETENTION CENTER
> P.O. BOX 562
> PHILADELPHIA, PA   19105
>
> *Pro Se*

> */s/Maria Guzman*
> Maria Guzman
> Assistant United States Attorney
> Florida Bar No. 053325
> 400 N. Tampa Street, Suite 3200
> Tampa, Florida 33602-4798
> Telephone:     (813) 274-6000
> Facsimile:     (813) 274-6358
> E-mail:Maria.Guzman@usdoj.gov