UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

  v.            CASE NO. 8:10-cr-136-JSM-EAJ

MICHELLE DUVAL

**UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE**

  The United States opposes Michelle Duval's motion for compassionate release, Doc. 113. The defendant fails to show any extraordinary and compelling reason that she should be released. Thus, the Court should deny her motion.

  The defendant cannot satisfy her burden of showing that her purported medical conditions or some unknown possibility of contracting COVID-19 (for a second time, after recovering from the virus in April 2020) satisfy the requirements for compassionate release based on the criteria outlined in 18 U.S.C. § 3582(c) and the sentencing guidelines. She also cannot establish that she presents no danger to the safety of another or the community. And, in any event, the Bureau of Prisons ("BOP") has implemented a COVID-19 action plan to minimize the risk of transmission into and throughout its facilities.[1] Accordingly, the defendant's health conditions and COVID-19 do not provide an extraordinary and compelling reason to grant the defendant compassionate release.

---

[1] *See* Updates to BOP Covid-19 Action Plan, available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

I.  **Pertinent Case Background**

On or about April 21, 2011, this Court sentenced the defendant to 188 months' imprisonment for being a felon in possession of a firearm. Doc. 74.

As detailed in the PSR, the charge against the defendant stemmed from the execution of a search warrant on December 18, 2019 pursuant to which law enforcement located two firearms, marijuana, crack cocaine, pills, and counterfeit currency in her residence. Doc. 113, Exh. B (Presentence Report (April 12, 2011)) at ¶ 14. Post-*Miranda*, the defendant, who was a convicted felon, admitted to possession of one of the firearms. *Id.* ¶ 16. The defendant was arrested on state charges and released on bond, but she violated that pretrial release and on February 24, 2010, execution of a second search warrant at her residence revealed additional marijuana and crack cocaine. *Id.* ¶ 18.

At sentencing, the Court concluded that the defendant was an Armed Career Criminal because she had two prior convictions for sale of cocaine and a prior conviction for robbery. *Id.* at ¶ 35. The Court sentenced the defendant at the low end of her Sentencing Guidelines range, which reflected an enhancement for possessing multiple firearms and for possession of a firearm in connection with narcotics offenses. *Id.* at ¶¶ 26, 27.

The defendant is currently incarcerated at Federal Correctional Facility in Danbury, Connecticut, is 49 years old, and is projected to be released on May 22, 2024. *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/. The defendant suffers from multiple medical conditions but is being treated within BOP as a chronic

2

care inmate for these conditions. *See generally* Doc. 113, Exh. H (detailing defendant's medical visits and medications); Bureau of Prisons, Health Services, for Inmate Michelle Duval for March 2021 through May 2021, attached as Exhibit A.[2] The medical records indicate that the defendant is able to undertake self-care within BOP. In April 2020, the defendant contracted COVID-19 while in Danbury, but she recovered from it, Doc. 113 at 12. On February 22, 2021, the BOP offered the defendant the COVID-19 vaccination and she refused, after a consultation with the pharmacist. *See* Bureau of Prisons, Health Services, Immunizations for 5/5/20 through 5/5/2021 for Inmate Michelle Duval, attached as Exhibit B; *accord* Exh. H at 174.[3] A BOP representative advised that the BOP continues to be willing to provide the defendant with the COVID-19 vaccination.

Duval petitioned the BOP multiple times for compassionate release based on COVID-19 concerns, which the Warden denied. *See* Doc. 113, Exh. F. In the February 23, 2021 denial, the Warden stated "Your case was denied based on your high risk score, history of resuming criminal activity, history of escape, serious

---

[2] Some of these records are duplicative of records contained in Exhibit H, but the exhibit contains all records for March 2021 through May 2021 in the interests of completeness.

[3] Defendant represents in her motion that "[t]wo members of Danbury's medical staff informed Ms. Duval that they were not comfortable giving her the COVID-19 vaccine," Doc. 113 at 18, but provides no substantiation for this claim. To the extent that the defendant claims she would like to speak further with doctor or pharmacist before obtaining the COVID-19 vaccine, Doc. 113 at 18, she has the ability to do this within BOP and indeed could have discussed the vaccination at her subsequent medical visits, but the medical records indicate that she failed to do so. *See, e.g.*, Exh. A at 4 (noting "no current issue" at March 24, 2021 visit).

history of violence, as well as the amount of time remaining on your sentence." Doc. 113, Exh. F at 9.

On May 4, 2021, the defendant filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 113. In support of her motion, the defendant claimed that she has medical issues, including obesity, Type 2 diabetes, COPD, hypertension, and asthma, which put her at higher risk of complications from COVID-19. *Id.* at 1. While these conditions certainly warrant medical attention and care, the defendant has not shown that they inhibit her ability to provide self-care in prison, and her medical conditions are being treated in the BOP. Further the defendant's fear of exposure to or catching COVID-19 alone is not an extraordinary and compelling reason to grant a defendant compassionate release.

**II.   Law**

Generally, a district court may not modify a defendant's term of imprisonment once it has been imposed unless permitted by statute or by Rule 35 of the Rules of Criminal Procedure. 18 U.S.C. § 3582(c); *see United States v. Diaz-Clark*, 292 F.3d 1310, 1319 (11th Cir. 2002) (district courts have no inherent authority to modify a sentence). The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit courts to modify a term of imprisonment not only upon a motion submitted by the Director of the Bureau of Prisons ("BOP"), but also "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

4

earlier." *See* First Step Act of 2018, 115 P.L. 391, § 603(b)(1). When a defendant has made such a showing, a court may reduce the defendant's sentence if, after considering the 18 U.S.C. § 3553(a) factors to the extent applicable, the court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).[4]

A defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). Congress delegated to the Sentencing Commission the authority to:

> describe what should be considered extraordinary or compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t). At USSG §1B1.13, the Sentencing Commission delineates four categories in which extraordinary and compelling circumstances may exist:

>     (1) the medical condition of the defendant is such that: (a) the defendant is suffering from a terminal illness;[5] or (b) the defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health due to

---

[4] 18 U.S.C. § 3582(c)(1)(A)(ii) allows for a sentencing reduction under other circumstances not present here.

[5] The application note includes, as an example, a situation where a defendant is suffering from a serious and advanced illness with an end-of-life trajectory or a specific prognosis with a probability of death within a specific time period. *See* USSG §1B1.13 comment (n.1).

aging that substantially diminishes the defendant's ability to provide self-care within the correctional facility and from which the defendant is not expected to recover;

(2) The defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his term of imprisonment;

(3) Particular family circumstances, not relevant to arguments raised by the defendant in her motion; and

(4) Other reasons as determined by the Director of the BOP, making the defendant's case an extraordinary and compelling reason other than, or in combination with, the other delineated categories.

See USSG §1B1.13.

Even when an extraordinary and compelling reason exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). USSG §1B1.13(2). And the court must consider, in general, whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. See 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

### III.    Argument

#### A.    Duval exhausted her administrative remedies

Duval has exhausted her administrative remedies. Duval petitioned the BOP multiple times for compassionate release based on COVID-19 concerns, which the Warden denied. See Doc. 113, Exh. F.

### B.   Duval's medical conditions do not warrant release.

Duval has not made a factual record that her purported medical conditions constitute "extraordinary and compelling" circumstances for compassionate release. In her motion, Duval referenced obesity, Type 2 diabetes, COPD, hypertension, and asthma as conditions she suffers from that put her at higher risk of complications from COVID-19. Doc. 113 at 1. The United States acknowledges that the Centers for Disease Control and Prevention (CDC) has identified all five of these conditions as risk factors that place individuals at higher risk of severe outcomes from COVID-19. But Duval does not explain how any of her medical conditions "substantially diminish [her] ability … to provide self-care within the environment of a correctional facility," as required to establish that these conditions constitute extraordinary and compelling circumstances for release. *See* USSG §1B1.13 comment n.1. And Duval's refusal to take the COVID-19 vaccine undermines her claimed concerns about contracting the virus. *See* Exh. B.

Defendant's motion does not satisfy her burden of showing "extraordinary and compelling" circumstances. In support of her motion, the defendant submits an affidavit from a doctor that the defendant's medical conditions place her at a higher risk of severe symptoms from contracting COVID-19. *See* Doc. 113, Exh. J. at 8-13.[6] The United States does not dispute this conclusion, but it does not answer the

---

[6] The defendant claims to have reviewed 810 pages of medical records, Exh. J, but the medical records appended to the defendant's motion only total 200 pages, Exh. H, so it is unclear what records the doctor reviewed.

7

relevant inquiry of whether the defendant can undertake self care in the prison environment. Tellingly, the doctor does *not* conclude that the defendant is unable to provide self care. Nor does the doctor conclude that the defendant is not a good candidate for a COVID-19 vaccination, which she refused.

 Multiple district courts in the Middle District of Florida have determined that defendants with similar medical conditions to the defendant's conditions—which put them at increased risk of severe COVID-19 outcomes—do not constitute "extraordinary and compelling" circumstances justifying compassionate release. *See, e.g.*, *United States v. Rey-Durier*, No. 8:15-cr-97-T-27TGW, 2020 WL 4349941, at *2 (M.D. Fla. July 29, 2020) (J. Whittemore) (court denied compassionate release for 68-year-old defendant with hypertension, high cholesterol, hypothyroid, glaucoma and obesity because none of these reasons were "extraordinary and compelling" circumstances); *United States v. Hayes*, No. 3:18-cr-37-J-34JBT, 2020 WL 3611485, at *2 (M.D. Fla. July 2, 2020) (J. Howard) (defendant's "allegations of having hypertension and obesity, alone or in combination with COVID-19," do not create an extraordinary and compelling justification for compassionate release) (emphasis added); and *United States v. Pennington*, No. 3:16-cr-61-J-39MCR, Doc. 181 (M.D. Fla. May 11, 2020) (J. Davis) (court denied compassionate release sought by defendant with a BMI of 41.2 because he failed to provide any "extraordinary or compelling reasons" for his release). In *Hayes*, the district court noted that in 2017-18, statistics showed that 43% of American adults had high blood pressure and 42% suffered from obesity. 2020 WL 3611485, at *2. The court concluded that if the

8

percentages were similar among federal prisoners and if obesity and hypertension qualified as extraordinary and compelling reasons in light of COVID-19, roughly half the prison population would be eligible for compassionate release. *Id.*

The defendant's other purported medical conditions do not change the analysis. In her motion, the defendant stated that she suffers from sleep apnea, seizure disorder, glaucoma and myopia, peripheral neuropathy, gastroesophageal reflux, uterine fibroids, and generalized anxiety disorder. *See* Doc. 113 at 15. The defendant also contended that she is a "COVID-19 long hauler" and suffers continued breathing difficulties while sleeping, Doc. 113 at 7.[7] But, as with her other medical issues, the defendant does not prove that any of these medical conditions substantially diminish her ability to provide self care in the prison environment. To the contrary, the medical records show that BOP is managing the defendant's issues. At the defendant's most recent visit with a doctor on May 12, 2021, she sought medical care for what she apparently believed was a heart attack and BOP determined was not. *See* Exh. A at 2. At the defendant's regular doctor's visit on March 24, 2021, the defendant reported "no current issue[s]." *See id.* at 4; Doc. 113, Exh. H at 1. Thus, the defendant physical condition provides no extraordinary or compelling reason for her release. *See, e.g.*, *United States v. Cannon*, No. CR 11-048-

---

[7] Defendant stated in the motion that medical staff ordered a consultation with a pulmonologist months ago. *See* Doc. 113 at 20. This is true but the need for a consultation is not due to COVID-19 but rather it is due to the defendant's chronic history of asthma and COPD. The target date for this consult is June 2021, which has not yet occurred. *See* Doc. 113, Exh. H. at 104 (February 8, 2021 records).

CG-M, 2019 WL 5580233, at *3 (S.D. Ala. Oct. 29, 2019) ("[D]espite the many medical afflictions Cannon identifies, he does not state, much less provide evidence, that his conditions/impairments prevent him from providing self-care within his correctional facility. Rather, the medical records provided by Cannon show that his many conditions are being controlled with medication and there is no mention that his conditions are escalating or preventing him from being . . . able to provide self-care."); *see also United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019) (denying compassionate release and noting that "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").

The defendant's motion alleges that the defendant receives substandard healthcare in prison. Doc. 113 at 19-20. But the medical records make clear that she has regular medical visits and evaluations. *See generally* Exh. A; Doc. 113, Exh. H. To the extent that the defendant has specific issues with her medical treatment – e.g., desire for a chair to sleep in or an outlet for her CPAP machine, Doc. 113 at 19, the proper avenue for those concerns is a BOP grievance not release from BOP custody.

Further, the defendant's claim in her motion that her health conditions are so severe that BOP agreed to release her on home confinement, Doc. 113 at 1, 6, is false. A BOP representative advised the undersigned that a BOP representative applied for home confinement on the defendant's behalf, as requested by the defendant, but that application was denied. The defendant was never approved for home confinement.

10

### C.   COVID-19 circumstances do not warrant release.

Duval's fear of potential COVID-19 exposure within BOP is not an extraordinary and compelling reason to grant release. *Raia*, 2020 WL 1647922 at *2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release because BOP's proposed plan adequately addresses the COVID-19 pandemic).

The United States is cognizant of inmate concerns stemming from COVID-19. Neither the United States nor the BOP minimize the concern or risk; this unique situation is being diligently monitored. The BOP has taken extraordinary steps to protect inmates. By virtue of being in the BOP's custody, Duval is in the presence of medical professionals at all times. Duval previously had COVID-19 in April 2020 and recovered from it. *See* Doc. 113 at 12. In the event that Duval becomes re-infected with COVID-19, she will be quarantined, monitored, and receive necessary medical treatment, wholly consistent with the CDC's guidelines.

The BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority."[8] Indeed, BOP has had a Pandemic

---

[8] BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19 _update.jsp.

Influenza Plan in place since 2012.[9] The plan addresses social distancing, mask requirements, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates. The BOP continues to take significant measures to protect the health of the inmates in its charge. The BOP maintains and updates regularly an action plan to maximize the safety and security of the inmates in its custody. Details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

### D. Duval's other arguments do not provide extraordinary and compelling reason for compassionate release.

The defendant has submitted arguments in her motion regarding her life circumstances prior to incarceration, her dissatisfaction with prison officials, and her apparent difficulties with other inmates in prison, *see* Doc. 113 at 5-8, but whatever the truth of these allegations, they do not constitute extraordinary and compelling circumstances for compassionate release. See USSG §1B1.13. Nor is the defendant's claimed rehabilitation, *see id.* at 23-24, an extraordinary and compelling reason for her release. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant *shall not* be considered an extraordinary and compelling reason.") (emphasis added).

---

[9] *See* BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf.

      **E.**    **Even if Duval could establish an extraordinary and compelling reason for compassionate release, the applicable section 3553(a) factors strongly weigh against granting her compassionate release.**

Further, this Court should deny release because the defendant cannot satisfy her burden of showing she is not a danger to the community. *See* USSG §1B1.13(2).

As detailed in the Presentence Report, the defendant has an extensive criminal history dating back to age 17, with 37 total criminal history points and a criminal history category VI. Doc. 113, Exh. B at 10-26. Her convictions include two convictions for sale of cocaine and a conviction for robbery, which made her an Armed Career Criminal. *Id.* at ¶ 35. Her prior offenses also include convictions for narcotics offenses, theft, exploiting an elderly person, introducing contraband into a detention facility, driving violations, and providing a false name to law enforcement. *Id*. at 10-26.

The defendant was convicted in this case of possessing a firearm as an Armed Career Criminal and the Sentencing Guidelines reflected a sentencing enhancement because she did so in connection with narcotics offenses. *Id*. at ¶ 27. The defendant violated her conditions of pretrial release in the underlying case by possessing additional narcotics in her residence. *Id.* ¶ 18.

Due to the seriousness of the offense and the defendant's criminal history, the Court appropriately sentenced the defendant to 188 months' imprisonment. Doc. 74 Duval has more than three years remaining on that sentence.

The defendant continued her history of violence in prison. While in BOP, she has been disciplined on 14 separate occasions. Bureau of Prisons, Inmate Discipline Data, Chronological Disciplinary Record, for Inmate Michelle Duval, attached as Exhibit C. Her disciplinary incidents include "assaulting without serious injury" in July 2019, Exh. C at 1, "fighting with another person" in October 2018, *id.*, and "fighting with another person" in January 2017, *id.* at 3.

## CONCLUSION

For the foregoing reasons, this Court should deny defendant's motion for compassionate release. Doc. 113.

                                            Respectfully submitted,

                                            KARIN HOPPMANN
                                            Acting United States Attorney

                                            */s/ Jennifer L. Peresie*
                                            Jennifer L. Peresie
                                            Assistant United States Attorney
                                            United States Attorney No. 120
                                            400 N. Tampa St., Ste. 3200
                                            Tampa, FL 33602-4798
                                            Telephone: (813) 274-6000
                                            Facsimile: (813) 274-6358
                                            E-mail: Jennifer.Peresie@usdoj.gov

U.S. v. Duval                                          Case No. 8:10-cr-136-JSM-EAJ

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2021, a true and correct copy of the foregoing document and the notice of electronic filing were sent by United States Mail to the following non-CM/ECF participant:

>Michelle Duval
>Reg. No. 51628-018
>FCI Danbury
>Route 37
>Danbury, CT 06811

>/s/Jennifer L. Peresie
>Jennifer L. Peresie
>Assistant United States Attorney
>United States Attorney No. 120
>400 N. Tampa St., Ste. 3200
>Tampa, FL 33602-4798
>Telephone: (813) 274-6000
>Facsimile: (813) 274-6358
>E-mail: Jennifer.Peresie@usdoj.gov

15